1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   CYNTHIA BOWLES and ANTONIO,                    CASE NO. F CV 10-0937 LJO GSA
     SOUSA,
12                                                  **ORDER ON DEFENDANTS' MOTION**
                        Plaintiffs,                 **FOR SUMMARY JUDGMENT**  (Doc. 18)
13
              vs.
14
     CITY OF PORTERVILLE, OFFICER
15   CHRIS MCGUIRE, and CHIEF CHUCK
     MCMILLAN,
16
                        Defendants.
17   _____/

18          Defendant City of Porterville ("City"), Officer Chris McGuire ("Office McGuire") and Chief

19   Chuck McMillan ("Chief McMillan") (collectively "Defendants") move for summary judgment of

20   plaintiffs Cynthia Bowles ("Ms. Bowles'") and Antonio Sousa ("Mr. Sousa's") (collectively

21   "Plaintiffs") remaining survival and wrongful death claims.  Defendants argue that they had adequate

22   cause to detain the decedent, the individual defendants are entitled to qualified immunity, Plaintiffs

23   cannot meet the heightened Fourteenth Amendment standards, and Plaintiffs' pendent state law claims

24   fail in the absence of a constitutional violation.  Plaintiffs oppose this motion, arguing that triable issues

25   of fact remain regarding whether Office McGuire used excessive deadly force, Plaintiffs' Fourteenth

26   Amendment claim raises triable issues of fact, Office McGuire is not entitled to qualified immunity, and

27   the state law claims survive.  Having considered the parties arguments, exhibits, and applicable legal

28   authorities, and

                                                    1

1   for the following reasons, this Court GRANTS Defendants' summary judgment motion.

2                                     BACKGROUND

3                              **Defendants' Evidence**

4          During the evening hours of October 20, 2009, Office McGuire and his partner, California

5   Highway Patrol Officer Kent McCord ("Officer McCord"), were on assignment for the Tulare County

6   Auto Theft Task Force.  They were both dressed in civilian clothing and driving an unmarked pickup

7   truck that was equipped with concealed emergency lights and siren.  Office McGuire was dressed in

8   casual civilian clothes, but was wearing his police badge, a duty handgun, a flashlight, and his police

9   radio. McGuire Depo., pp. 10-11.  Office McCord was wearing similar equipment and clothing, except

10  that he was also wearing a Taser.

11         On the evening in question, the officers observed the decedent Joseph Bowles ("Mr. Bowles")

12  in several commercial parking lots.  They observed Mr. Bowles peering into windows of vehicles parked

13  in the lots of a Wal-Mart, Lowe's, Chili's, and Evolutions Fitness Center. McCord Depo., pp. 13-16.

14  Mr. Bowles was peering into parked vehicles with cupped hands and trying to open door handles. *Id*.

15  at 31.

16         The officers decided to stop Mr. Bowles for an investigatory detention.  Officer McCord exited

17  the undercover vehicle while Office McGuire activated the vehicle's emergency lights. Officer McCord

18  displayed his badge, identified himself as a police officer, and asked to speak with Mr. Bowles.  Mr.

19  Bowles immediately ran from the officers despite clear orders to "stop" or he would be Tasered.  Officer

20  McCord began to pursue Mr. Bowles. When he became tired, Office McGuire took over the foot pursuit

21  of Mr. Bowles.

22         Officer McGuire knew that suspects are frequently armed and that Mr. Bowles had not yet been

23  patted down for weapons.  As such, Office McGuire determined that the best tactic was to continue to

24  chase Mr. Bowles, who was showing increasing signs of tiring.  At one point, Mr. Bowles did stop.

25  Office McGuire detected unidentified bulges in Mr. Bowles' front pockets, but did not perceive him to

26  be an immediate threat.  As such, Office McGuire did not fire his weapon when Mr. Bowles took off

27  running again.  Office McGuire continued to pursue Mr. Bowles on foot.

28         When Mr. Bowles reached the sidewalk between the parking lot and a main boulevard, he

                                            2

suddenly and unexpectedly reached toward his waistband despite orders to show his hands. At the same time, Mr. Bowles quickly spun to his left while Office McGuire sidestepped to his right while drawing his handgun. As Mr. Bowles continued to spin toward the officer, Officer McGuire's flashlight illuminated Mr. Bowles' hands, which were extended in front of him and holding a shiny metallic and cylindric object. In the split seconds that Officer McGuire had to evaluate the situation, he was certain that Mr. Bowles was about to shoot with him a gun. Officer McGuire fired a single shot. The shot hit Mr. Bowles in the left chest area.

The shot caused Mr. Bowles' hands to go up in the air. The object in Mr. Bowles' hands, what turned out to be a cologne bottle with a cylindrical metal top, flew into the air and landed in a nearby planter. Mr. Bowles landed on his stomach on the sidewalk. He was moving and flailing his arms. Officer McCord arrived in less than a minute. A pat-down of Mr. Bowles revealed a second cologne bottle in Mr. Bowles' pants. This bottle was removed and tossed to the dirt area near the first bottle.

Mr. Bowles was treated at the scene. He later died at a nearby hospital.

**Plaintiffs' Evidence**

Plaintiffs are the parents of Mr. Bowles. Plaintiffs do not dispute the basic background facts related to the initial stop of Mr. Bowles and the subsequent foot chase. Plaintiffs point out these additional facts:

At the time the officers decided to stop Mr. Bowles, Officer McGuire did not believe that Mr. Bowles committed any crime. Other than the fact that he was running, Mr. Bowles never manifested any other behavior that led Officer McGuire to believe that he might be armed prior to the shooting. Mr. Bowles never threatened to harm Officer McGuire at any point prior to the shooting. Office McGuire concedes that he did not believe that Mr. Bowles was armed prior to the point when Mr. Bowles began to spin to his left.

Office McGuire shot Mr. Bowles from approximately ten feet away. Office McGuire never gave any type of warning or command to Mr. Bowles that he was going to shoot him. City police officers are trained that, when feasible, they must give a command to drop an object perceived to be a weapon prior to using deadly force.

Plaintiffs argue that a reasonable interpretation of the evidence is that both cologne bottles were

in Mr. Bowles' pocket at the time of the shooting and that Office McGuire took the cologne bottle out of his pocket after the shooting.  Two cologne bottles were recovered and processed into evidence at the scene.  One of the cologne bottles is clear with a silver cap.  The other is dark green, square, with a gold cap.  The dark green square bottle was seen in Mr. Bowles' back pocket by a police officer and paramedics arriving on the scene, after Mr. Bowles rolled onto his stomach.  The first office on the scene, Officer McCord, never saw the clear cologne bottle.  Officer Hinijosa, the second officer to arrive on the scene, initially did not see the clear bottle, despite going to the exact area where the bottle was allegedly located.  Officer Hinijosa saw the green bottle, but not the clear bottle until later.[1]  Although Office McGuire testified that the cologne bottle landed in the flowerbed after the shooting, no one observed the clear cologne bottle in the flowerbed.  It was not until after Officer Hinijosa returned to the scene after securing the area that he observed the clear cologne bottle sitting on the sidewalk.  Others who arrived on the scene also observed the green cologne bottle still in Mr. Bowles' back pocket and the clear cologne bottle on the sidewalk.

Office McGuire counters that while the clear cologne bottle initially landed in the planter, he picked up the bottle immediately after the shooting and moved it farther into the dirt, away from the flailing Mr. Bowles in order to ensure that it did not get destroyed or lost by paramedics or other arriving emergency personnel.

Plaintiffs dispute Officer McGuire's account.  Plaintiffs point out that officers are trained to put on gloves before touching evidence to avoid leaving fingerprints.  In addition, although Office McGuire claims that he picked up the cologne bottle and showed it to Sgt. Morales, Sgt. Morales has no recollection of this.  Sgt. Morales instead remembers that the clear bottle was already sitting on the concrete when he arrived on the scene after Officer Hinijosa.

Plaintiffs also submit evidence of two experts to support their claims.  Dr. Jesse Wobrock's opinion is that the downward trajectory of the bullet indicates that Mr. Bowles was not standing erect at the time he was shot.  Dr. Wobrock's opinion is that Mr. Bowles' body was already down or moving down toward the ground when he was shot (e.g., kneeling to the ground or possibly surrendering).  In

---

[1] When Officer Hinijosa arrived, he saw Office McGuire covering Mr. Bowles with his duty weapon.  He saw Mr. Bowles roll off the concrete and onto his stomach in the flower bed.  Upon arriving on the scene, Officer Hinijosa immediately approached Mr. Bowles and began rendering aid to Mr. Bowles, who was right next to the planter.

the opinion of Roger Clark, a reasonably trained deputy would not have used lethal force in this case. In his opinion, the circumstances leading to the shooting would not have lead a reasonable officer to conclude that Mr. Bowles posed an imminent threat of death or serious bodily injury to anyone, because he was not armed, had committed no crime, never threatened the officers, and was merely running away. In addition, Mr. Clark opines that if Mr. Bowles had a bottle of cologne in his hand at the time of the shooting, Officer McGuire could not have reasonably mistaken the bottle of cologne for a firearm under these circumstances, because officers are trained to determine the difference between an actual weapon and an imaginary one.

**Procedural History**

Plaintiffs filed a complaint against Defendants on behalf of themselves and as successors-in-interest to Mr. Bowles.  Plaintiffs asserted six causes of action against Defendants:

(1)     Unreasonable search and seizure–Detention and Arrest, pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution;

(2)     Unreasonable search and seizure–Excessive Force and Denial of Medical Care;

(3)     Substantive Due Process–Denial of Familial Relationship;

(4)     Municipal and Supervisory Liability;

(5)     Battery; and

(6)     Negligence.

According to Defendants, Plaintiffs have agreed to dismiss voluntarily their *Monell* claims against the City and Chief McMillan, as set forth in the fourth cause of action and portions of the sixth cause of action.  In addition, Defendants assert that Plaintiffs have agreed to dismiss voluntarily all claims arising out of any alleged failure to provide timely or adequate medical care as set forth in the second and sixth causes of action.  In opposition, Plaintiffs do not object to Defendants' statement that Plaintiffs are dismissing these claims.  In addition, Plaintiffs affirmatively do not oppose Defendants' summary judgment motion on Plaintiffs' first cause of action related to the unlawful detention claim. Accordingly, this order addresses Plaintiffs' remaining claims; to wit, Plaintiffs' second cause of action related to excessive force; third cause of action related to substantial due process denial of familial association; and fifth and sixth causes of action, related to battery and negligence.  In addition, this

1   Court addresses Defendants' affirmative defense of qualified immunity.[2]

2   <center>**STANDARD OF REVIEW**</center>

3   Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery,

4   and the affidavits provided establish that "there is no genuine dispute as to any material fact and the

5   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one which

6   may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A

7   dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor

8   of the nonmoving party.  *Id*.

9   A party seeking summary judgment "always bears the initial responsibility of informing the

10   district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

11   answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

12   demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

13   (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an issue

14   at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the

15   moving party." *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue as

16   to which the nonmoving party will have the burden of proof, however, the movant can prevail merely

17   by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing

18   *Celotex*, 477 U.S. at 323).

19   If the movant has sustained its burden, the nonmoving party must "show a genuine issue of

20   material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v.*

21   *Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in the original).  The nonmoving party must

22   go beyond the allegations set forth in its pleadings. Fed. R. Civ. P. 56(c).  "[B]ald assertions or a mere

23   scintilla of evidence" will not suffice.  *Stefanchik*, 559 F.3d at 929.  Indeed, the mere presence of "some

24   metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary judgment.

25   *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record

26

27   [2] Omission of reference to any evidence, argument, or objection in the discussion below should not be construed
28   to the effect that the Court did not consider the evidence, argument, or objection.  The Court carefully considered the parties' positions and reviewed and applied all evidence deemed admissible, material, and appropriate.  The Court does not rule on general evidentiary matters in a summary judgment context, unless otherwise noted.

<center>6</center>

1  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2  'genuine issue for trial.'" *Id.* at 587.

3      In resolving a summary judgment motion, "the court does not make credibility determinations

4  or weigh conflicting evidence." *Soremekun,* 509 F.3d at 984.  That remains the province of the jury.  *See*

5  *Anderson*, 477 U.S. at 255.  Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all

6  justifiable inferences are to be drawn in [its] favor." *Id.*  Inferences, however, are not drawn out of the

7  air; the nonmoving party must provide a factual predicate from which the inference may justifiably be

8  drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

9                                      DISCUSSION

10  **I.    Unreasonable Force Claim (Second Cause of Action)**

11      **A.    Standards**

12      Plaintiffs assert a Fourth Amendment unreasonable force claim against the Defendants pursuant

13  to section 1983.  To state a claim under section 1983, a plaintiff must allege two essential elements: (1)

14  that a right secured by the Constitutional or laws of the United States was violated and (2) that the

15  alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S.

16  42, 48 (1988).  The parties do not dispute that Office McGuire was acting under color of law.

17  Accordingly, this Court need only address the first element–whether Office McGuire violated the Fourth

18  Amendment.

19      "Determining whether the force used to effect a particular seizure is reasonable under the Fourth

20  Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's

21  Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v.*

22  *Connor*, 490 U.S. 386, 396 (1989).  Excessive force is that which "was not 'objectively reasonable' in

23  light of the facts and circumstances confronting the officer." *Robinson v. Solano County*, 278 F.3d 1007,

24  1013 (9th Cir. 2002). In *Graham*, 490 U.S. at 396-397, the U.S. Supreme Court provided guidance on

25  reasonableness of use of force:

26      Because "[t]he test of reasonableness under the Fourth Amendment is not capable of
       precise definition or mechanical application . . . however, its proper application requires
27     careful attention to the facts and circumstances of each particular case, including the
       severity of the crime at issue, whether the suspect poses an immediate threat to the safety
28     of the officers or others,  and whether he is actively resisting arrest or attempting to
       evade arrest by flight. . . .

                                          7

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. (Citations omitted.).

Although "reasonableness traditionally is a question of fact for the jury," a defendant can prevail on summary judgment if the court "concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994), *cert. denied*, 515 U.S. 1159(1995). The Ninth Circuit Court of Appeals has observed:

> But, as the test of the Fourth Amendment indicates, the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them. . . . Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. . . .
>
> Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable.

*Id*.

In appropriate cases, this Court may consider other factors, including whether a warrant was used, the plaintiff resisted or was armed, more than one arrestee or officer was involved, plaintiff was sober, other dangerous or exigent circumstances existed, and nature of charges. *See Chew v. Gates*, 27 F.3d 1432, 1440, n. 5 (9th Cir. 1994), *cert. denied*, 513 U.S. 1148 (1995); *see also*, *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1778 (2007).

### B.   Defendants' Arguments

Defendants argue that the undisputed facts of the case establish Office McGuire used reasonable force against Mr. Bowles.  Defendants' argument is based on the following facts:

1.   Office McGuire was an experienced auto theft investigator who had witnessed Mr. Bowles suspiciously peering into several parked cards in vehicles in an area with a high level of auto-related thefts;

8

2.     When contacted by clearly-identified police officers, Mr. Bowles immediately fled on foot despite clear orders to stop;

3.     Officer McGuire knew that Mr. Bowles had not been patted down for weapons.

4.     Office McGuire observed bulges in Mr. Bowles' front pants pocket.

5.     When Mr. Bowles momentarily stopped and turned to his pursuing officer at one point during the foot pursuit, Office McGuire did not fire his weapon since no immediate threat was perceived.

6.     When Mr. Bowles suddenly stopped and quickly spun to his left on the second occasion, however, Officer McGuire saw Mr. Bowles cupping a metallic, cylindrical object in his hands which came from his waistband area and were not extending in front of him as he spun toward the officer.

7.     In the split seconds that Office McGuire had to evaluate this unexpected movement in poor lighting, Office McGuire believed that Mr. Bowles was about to shoot him with what appeared to be a gun.

Based on these undisputed facts, Defendants' brief legal argument addresses only two of the pertinent factors to be considered in an excessive force analysis.  First, they point out that this Court can consider the culpability of the defendant in its analysis.  Second, Defendants assert that Office McGuire was not required, as a matter of law, to "find and choose the least intrusive alternative" force.  Mot., p. 8-9 (quoting *Scott*, 39 F.3d at 915).  Relying on these principles, Defendants argue that "it cannot be disputed that any reasonable officer faced with these rapidly unfolding and tense circumstances (created entirely by [Mr.] Bowles) would use...deadly force to defend a perceived, imminent threat." Mot., p. 9.[3]

## C.     Plaintiffs' Arguments

Plaintiffs argue that Officer McGuire used excessive force in violation of the Fourth Amendment, because Mr. Bowles posed no immediate threat of death or serious bodily injury to Officer McGuire when he was shot and killed.  Plaintiffs point out that the "most important" factor in the excessive force inquiry is whether Mr. Bowled posed an immediate threat to the safety of the officer or

---

[3]This sentence has been modified to reflect what this Court assumes is the defendants' position.  The original sentence reads: "[i]t cannot be disputed that any reasonable officer faced with these rapidly unfolding and tense circumstances (created entirely by Bowles) would use *anything but* deadly force to defend a perceived, imminent threat." (emphasis added).

others. *See Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).   Plaintiffs argue that taken in a light most favorable to them, Mr. Bowled posted no immediate threat to anyone.  Office McGuire had no information that Mr. Bowles was armed.  Mr. Bowles had committed no crime and was merely fleeing an investigatory detention.  Mr. Bowles never verbally threatened Officer McGuire or tried to harm him in any way during the pursuit.  Office McGuire could not have reasonably believed that a fleeing, unarmed person posed an immediate threat to anyone.  Plaintiffs further argue that the jury could believe, based on the testimony of plaintiffs' expert Jesse Wobrock, that Mr. Bowles' body was positioned lower than Office McGuire at the time of the shot, consistent with Mr. Bowles attempting to comply with Officer McGuire's instructions to get down on the ground.  Plaintiffs conclude that it was unreasonable for Office McGuire to conclude that an unarmed person in the act of surrendering was an imminent threat.

Plaintiffs also assert that it is a disputed material fact whether Mr. Bowles had a cologne bottle in his hand at the time he was shot.  Plaintiffs argue that Officer McGuire's testimony that Mr. Bowles had a cologne bottle in his hand while he was turning around is inconsistent with the physical evidence or other witness accounts in this case.  Plaintiffs argue that Officers McCord and Hinijosa, the first officers on the scene, did not see the clear-colored cologne bottle in the flowerbed or anywhere near Mr. Bowles' body when they arrived.  Plaintiffs assert that Sgt. Morales does not remember Officer McGuire taking the cologne bottle out of the flowerbed, and instead remembers seeing it sitting on the sidewalk. Moreover, Plaintiffs argue that Officer McGuire admits that he moved the cologne bottle out of the flowerbed before the evidence technicians arrived, despite the fact that officers are supposed to preserve crime scene evidence and avoid touching it with ungloved hands.

### D.    Analysis

Although this Court must view the facts in a light most favorable to Plaintiffs, this Court must also consider the entire record of undisputed facts.  In addition, this Court  must also distinguish between Plaintiffs' asserted "facts" and Plaintiffs' arguments disguised as allegedly disputed material fact.  Thus, for example, while Plaintiffs repeatedly point out that Mr. Bowles had committed no crime, Plaintiffs ignore the undisputed evidence that the officers had developed an abundance of reasonable suspicion that Mr. Bowles was attempting to commit a crime since they observed him looking through

windows and lifting door handles of several cars in multiple commercial parking lots with a history for car theft.  In addition, Plaintiffs assert that Officer McGuire had no reason to believe that Mr. Bowles was armed.  This unsupported assertion ignores Officer McGuire's testimony that he was concerned, because this type of fleeing suspect is often armed, had not been patted down for weapons, and that he saw bulges in Mr. Bowles' pants pockets at the first encounter when Mr. Bowles stopped.  Plaintiffs' assertion that Officer McGuire failed to warn Mr. Bowles prior to the shooting also ignores the testimony of both officers who testified that they continued to shout warnings at Mr. Bowles prior to and during the chase.

Plaintiffs also dispute whether Mr. Bowles actually had the cologne bottle in his hand at the time he was turning around and whether Office McGuire mistook that cologne bottle as a weapon.  Officer McGuire testified to these facts.  Plaintiffs contend that this testimony is disputed by and inconsistent with the physical evidence and the testimony of other officer witnesses.  Plaintiffs asserted evidence, however, does not present an accurate picture and does not dispute Officer McGuire's testimony. Although Plaintiffs accurately note that Officer McCord did not immediately see the cologne bottle when he first arrive on scene, for example, the evidence demonstrates that Officer McCord did in fact observe the cologne bottle exactly where Officer McGuire said it landed in the flowerbed as soon as Officer McCord switched his focus from the unsecured Mr. Bowles.  Plaintiffs also misleadingly claim that Sgt. Morales did not recall Officer McGuire pointing out the cologne bottle upon his arrival.  A review of the record cited for this assertion shows that Sgt. Morales was never asked and never commented on whether the cologne bottle was pointed out.  Based on a review of Plaintiffs' cited evidence, there is no evidence to dispute that Officer McGuire then moved the bottle a minute later to the cement location, where the subsequently-arriving witnesses first saw it.  Plaintiffs' position that Mr. Bowles was not holding the cologne bottle at the time he was shot is based on pure speculation, rather than physical or testamentary evidence.  Solid argument that is based on pure speculation is not enough to oppose a summary judgment motion.

Accordingly, this Court must consider whether Officer McGuire's use of deadly force was reasonable under the circumstances in which he was chasing a suspect who he witnessed attempting to break into cars in multiple commercial parking lots and who suddenly stopped and turned toward Officer

McGuire holding something shiny in his hands which Officer McGuire mistook to be a weapon. Determining the reasonableness of the officers actions is a "highly fact-intensive task for which there are no per se rules." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) (quoting *Scott*, 550 U.S. at 383). As set forth above, this Court does not consider reasonableness with the clarity of 20/20 hindsight. Rather, the court adopts "the perspective of a reasonable officer on the scene...in light of the facts and circumstances confronting him." *Id.* (quoting *Graham*, 490 U.S. at 396). "Where an officer's particular use of force is based on a mistake of fact, [the court asks] whether a reasonable officer would have or *should* have accurately perceived that fact." *Id.* (emphasis in original) (citing *Jensen v. City of Oxnard*, 145 F.3d 1078, 1086 (9th Cir. 1998). "Standing in the shoes of the 'reasonable officer,'" then Court then considers whether the "severity of force applied was balance with the need for such force considering the totality of the circumstances[.]" *Id.*

Considered under this framework, this Court finds that in light of the facts and circumstances confronting Officer McGuire, and from the perspective of an officer in pursuit of a fleeing suspect who had not been patted down for weapons and who had been observed to have bulges in his pants pockets, it was not unreasonable for Officer McGuire to perceive Mr. Bowles to be a threat to his safety when he stopped suddenly and turned around towards Officer McGuire with something shiny in his hands. Although hindsight demonstrates that Mr. Bowles was holding a cologne bottle and not a weapon, and posed no threat to Officer McGuire, the proper inquiry does not consider the reasonableness of Officer McGuire's actions with the clarity of hindsight. Mr. Bowles was actively attempting to evade arrest by flight and was reasonably–though incorrectly–perceived to be a threat to the immediate safety of the officer by stopping and turning towards the officer holding what appeared to be a weapon in his hands. Under these circumstances, this Court finds that from the perspective of a reasonable officer on the scene and in light of the facts and circumstances confronting Officer McGuire at the time, the use of deadly force in this situation was not excessive. Accordingly, summary judgment is granted in favor of the Defendants on this cause of action.

## II.      Qualified Immunity

Officer McGuire alternatively argues that he is entitled to qualified immunity. Qualified immunity protects section 1983 defendants "from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004). The "heart of qualified immunity is that it spares the defendant from having to go forward with an inquiry into the merits of the case. Instead, the threshold inquiry is whether, assuming that what the plaintiff asserts the facts to be is true, any allegedly violated right was clearly established." *Kelley v. Borg*, 60 F.3d 664, 666 (9th Cir. 1995).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* Courts stress "the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514 (1994); *Romero v. Kitsap County*, 931 F.2d 624, 627-628 (9th Cir. 1991). The Ninth Circuit Court of Appeals has explained:

> Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the qualified immunity analysis is "to consider the materials submitted in support of, and in opposition to, summary judgment in order to decide whether a constitutional right would be violated if all facts are viewed in favor of the party opposing summary judgment." *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001). "If no constitutional violation is shown, the inquiry ends." *Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003). On the other hand, if "the parties' submissions" create a triable issue of whether a constitutional violation occurred, the second question is "whether the right was clearly established." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

*Squaw Valley*, 375 F.3d at 943.

The "contours" of the allegedly violated right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 (1987). "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205.

Qualified immunity "turn[s] primarily on objective factors": "Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should

1   avoid excessive disruption of government and permit the resolution of many insubstantial claims on

2   summary judgment." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "If the law did not put the officer

3   on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity

4   is appropriate." *Saucier*, 533 U.S. at 202.

5        As discussed more fully above, this Court has determined that there was no constitutional

6   violation, because the use of force–though based on a factual mistake–was reasonable under the

7   circumstances from the perspective of the officer and under the circumstances confronting him.

8   "Because 'police officers are often forced to make split-second judgments -- in circumstances that are

9   tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular

10   situation,' . . . the reasonableness of the officer's belief as to the appropriate level of force should be

11   judged from that on-scene perspective." *Saucier*, 533 U.S. at 205 (quoting *Graham v. Connor*, 490 U.S.

12   386, 397).  From this on-scene perspective, Officer McGuire reasonably believed that Mr. Bowles posed

13   a threat to his life.   Accordingly, because no there was no constitutional violation, Officer McGuire is

14   entitled to qualified immunity.

15   **III.**     **Due Process Claim (Third Cause of Action)**

16        Plaintiffs' third cause of action is based on their claim for loss of familial relations with their son.

17   The substantive component of the Due Process Clause "forbids the government from depriving a person

18   of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit

19   in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)

20   (quoting *United States v. Salerno*, 481 U. S. 739 (1987)).

21        Defendants contend that Plaintiffs have no evidence to establish an essential element of their

22   claim; to wit, "purpose to harm."   To establish a Fourteenth Amendment claim, Plaintiffs bear the

23   burden of demonstrating that Officer McGuire "acted with a purpose to harm decedent that was

24   unrelated to legitimate law enforcement objectives." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th cir.

25   2008).  The Ninth Circuit has explained:

26        A much higher standard of fault than deliberate indifference has to be shown for officer
            liability–that is–whether the force was applied in a good faith effort to maintain or
27        restore discipline or maliciously or sadistically for the very purpose of causing harm.

28   *Id*. at 1138 (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

1    Plaintiffs argue that a reasonable jury could conclude that Officer McGuire had a purpose to

2    harm Mr. Bowles based on the facts that Officer McGuire shot an unarmed man who committed no

3    crime without warning.  Plaintiffs argue that such conduct could not have furthered any legitimate law

4    enforcement purpose.  Plaintiffs' position again ignores undisputed facts that Mr. Bowles was fleeing,

5    had not been patted down for weapons, had bulges in his pants, ignored the officers' commands to stop,

6    and then stopped suddenly and turned to Officer McGuire holding a shiny object in his hands.

7    The undisputed facts demonstrate that Plaintiffs cannot raise a genuine issue of material fact as

8    to whether Officer McGuire acted with a purpose to harm Mr. Bowles that was unrelated to a legitimate

9    law enforcement purpose.  The standard is high for officer defendants in this type of action, because

10   courts recognize the "constant flux" and "confusion" present in these circumstances and the "split-

11   second" decisions that the officers must consider. *Bingue v. Prunchak*, 512 F.3d 1169, 1176 (2008).

12   Based on the high standard and lack of evidence to raise a genuine issue of fact as to whether Officer

13   McGuire acted with a purpose to harm Mr. Bowles in a way that was unrelated to a legitimate law

14   enforcement purpose, Defendants are entitled to summary judgment in their favor on this cause of

15   action.

16   **IV.    Pendent State Law Claims (Fifth and Sixth Causes of Action)**

17   Plaintiffs assert a battery claim based on the underlying facts of their excessive force claim.  To

18   maintain their battery claim, Plaintiffs must establish that the force used by Defendants was

19   unreasonable under the circumstances. *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274, 74 Cal.

20   Rptr. 2d 614 (Cal. App. 4th 1998).  That is, state claims arising out of allegations of excessive force

21   must be analyzed under the same reasonableness standard as provided by applicable federal authorities.

22   Id.  Moreover, once it has been determined that an officer's conduct did not violate a plaintiff's federal

23   rights, his or her corresponding state claim of battery also fails. *Simi Valley v. Sup. Ct.*, 111 Cal. App.

24   4th 1077, 1084 (2003).  For the reasons set forth above, and because this Court found that Plaintiffs have

25   failed to raise a genuine issue of fact that Plaintiffs' federal rights were violated, Defendants are also

26   entitled to summary judgment on Plaintiffs battery claim.

27   Finally, Defendants argue that Plaintiffs' negligence claim fails because their federal claims do

28   not survive.  Refuting Plaintiffs' cases cited to the contrary, Defendants go further to argue that "no form

15

1    of negligence may survive against a public entity."  For this legal proposition, Defendants cite to

2    *Eastburn v. Regional Fire Protection*, 31 Cal.4th 1175 (2003).  Upon reading this case, this Court

3    disagrees with the County defendants' representation of the conclusion of that case.  In addition,

4    Eastburn does not overturn the "ancient law" cited by Plaintiffs.  Indeed, *Munoz v. Olin*, 24 Cal. 3d 629

5    (1979) and *Grudt v. City of Los Angeles*, 2 Cal. 3d 575 (1970) both continue to be good law.  *See, e.g.*,

6    *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 534 (2009) (relying on Munoz for the legal authority that

7    an "officer's lack of due care can give rise to negligence liability for the intentional shooting death of

8    a suspect.").

9         Although *Munoz* remains good law, Plaintiffs have failed to establish their negligence claim.

10   Because this Court has concluded that Officer McGuire's "decision to use deadly force and his use of

11   deadly force were objectively reasonable under the circumstances...[he] met his duty to use reasonable

12   care in deciding to use and in fact in using deadly force." *Brown,* 171 Cal. App. 4th at 534.

13   Accordingly, "as a matter of law," Officer McGuire "cannot be found to be negligent in this regard."

14   *Id*.  Based on this legal authority, Plaintiffs' negligence claim fails as a matter of law.

15                                   **Conclusion and Order**

16        For the foregoing reasons, this Court:

17   1.    GRANTS Plaintiffs' request to dismiss voluntarily their denial of medical care (part of

18         second cause of action) and *Monell* (fourth cause of action) claims;

19   2.    GRANTS Defendants' unopposed motion on Plaintiffs' unlawful arrest and detention

20         claim (first cause of action); and

21   3.    GRANTS Defendants' summary judgment motion on Plaintiffs' excessive force (part of

22         second cause of action), Fourteenth Amendment claim (third cause of faction), and

23         battery claim (fifth cause of action) and negligence claim (sixth cause of action).

24

25

26

27                              IT IS SO ORDERED.

28   **Dated:    May 23, 2012**            **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE